No. 20-15946

# United States Court of Appeals for the Ninth Circuit

IGNACIO PEREZ, individually and on behalf of himself
and all others similarly situated,

*Plaintiff-Appellee*,

v.

RASH CURTIS & ASSOCIATES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of California
(No. 4:16-cv-3396—Hon. Yvonne Gonzalez Rogers)

## [PROPOSED] BRIEF OF AMICUS CURIAE FACEBOOK, INC., IN SUPPORT OF APPELLANT

Roman Martinez
  *Counsel of Record*
Andrew B. Clubok
Susan E. Engel
Michael Clemente
Gregory B. in den Berken
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
roman.martinez@lw.com

January 6, 2021

*Counsel for Amicus Curiae Facebook, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Facebook, Inc., has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST OF AMICUS CURIAE ..........................................1

INTRODUCTION ........................................................................................3

ARGUMENT ..............................................................................................5

    THE ATDS PROVISION CANNOT BE ENFORCED AGAINST CALLS
    MADE WHEN THAT PROVISION WAS UNCONSTITUTIONAL ...............5

        A.    *AAPC* Held That The ATDS Restriction Violated The First
            Amendment Between November 2015 And July 2020 ......................5

        B.    Callers Cannot Be Held Liable For Violating The
            Unconstitutional ATDS Provision ......................................................10

        C.    *AAPC*'s Severability Holding Cannot Retroactively Cure The
            First Amendment Violation.................................................................12

        D.    Justice Kavanaugh's Non-Binding Footnote 12 Is Irreconcilable
            With *AAPC*'s Equal-Treatment Holding.............................................23

        E.    None Of The Other Rationales For Applying The Severability
            Holding Retroactively Withstands Scrutiny........................................26

CONCLUSION ..........................................................................................31

CERTIFICATE OF COMPLIANCE ........................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Ass'n of Pol. Consultants, Inc. v. FCC,*
  923 F.3d 159 (4th Cir. 2019) ...............................................................6

*Arthrex, Inc., v. Smith & Nephew, Inc.,*
  941 F.3d 1320 (Fed. Cir. 2019), *cert. granted,* --- S. Ct. ---, 2020
  WL 6037208 (Oct. 13, 2020)..........................................................19, 20

*Arthrex, Inc., v. Smith & Nephew, Inc.,*
  953 F.3d 760 (Fed. Cir. 2020) .......................................................20, 21

*Barr v. Am. Ass'n of Pol. Consultants, Inc.* (*AAPC*),
  140 S. Ct. 2335 (2020)....................................................................*passim*

*Bates v. State Bar of Ariz.,*
  433 U.S. 350 (1977)................................................................................12

*Brickman v. Facebook, Inc.,*
  230 F. Supp. 3d 1036 (N.D. Cal. 2017)..................................................1

*Chicot Cnty. Drainage Dist. v. Baxter State Bank,*
  308 U.S. 371 (1940)................................................................................13

*Creasy v. Charter Commc'ns, Inc.,*
  No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ............16, 24, 27

*Duguid v. Facebook, Inc.,*
  926 F.3d 1146 (9th Cir. 2019), *cert. granted on statutory question,*
  141 S. Ct. 193 (2020)..........................................................................1, 29, 30

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.* (*PCAOB*),
  561 U.S. 477 (2010)........................................................................11, 14

*Frost v. Corp. Commission of Okla.,*
  278 U.S. 515 (1929)................................................................................29

*Gallion v. United States,*
  772 F. App'x 604 (9th Cir. 2019) ........................................................30

ii

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)..............................................................................*passim*

*Harper v. Va. Dep't of Tax'n*,
    509 U.S. 86 (1993)................................................................................13

*Heckler v. Mathews*,
    465 U.S. 728 (1984)..............................................................................21

*Holt v. Facebook, Inc.*,
    240 F. Supp. 3d 1021 (N.D. Cal. 2017)................................................1

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
    No. 20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020)............27

*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*,
    684 F.3d 1332 (D.C. Cir. 2012)...........................................................21

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)................................................................11, 12, 22

*Lindenbaum v. Realgy, LLC*,
    No. 19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020),
    *appeal docketed*, No. 20-4252 (6th Cir. Nov. 30, 2020)............*passim*

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995)..............................................................................12

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
    839 F.3d 1 (D.C. Cir. 2016), *reinstating panel decision on due*
    *process point en banc*, 881 F.3d 75 (D.C. Cir. 2018)........................22

*Police Dep't of Chi. v. Mosley*,
    408 U.S. 92 (1972)................................................................................15

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994)..............................................................................14

*Rogers v. Tennessee*,
    532 U.S. 451 (2001)..............................................................................22

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020)..............................................................11, 18, 19

*Sessions v. Morales-Santana*,
137 S. Ct. 1678 (2017) ...............................................................16, 17

*Shen v. Tricolor Cal. Auto Grp., LLC*,
No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020) ........................24

*Trujillo v. Free Energy Savings Co.*,
No. 19-cv-2072, 2020 U.S. Dist. LEXIS 239730
(C.D. Cal. Dec. 21, 2020) ....................................................27, 28, 29

*United States v. Booker*,
543 U.S. 220 (2005)...................................................................17, 18

## CONSTITUTIONAL PROVISIONS

First Amendment.............................................................................*passim*

Sixth Amendment .......................................................................17

## STATUTES

47 U.S.C.
§ 227(b)(1)(A)(iii)...............................................................1, 3, 5, 25
§ 227(b)(3) ...............................................................................24
§ 608.........................................................................................8

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 ........................5

## OTHER AUTHORITIES

AAPC Brief, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S. Ct. 2335 (No. 19-631), 2020 WL 1478621 ...........................................23

CFPB Reply Brief, *Seila Law LLC v. Consumer Fin. Prot. Bureau*,
140 S. Ct. 2183 (No. 19-7), 2020 WL 774433 ..................................................18

Gov't Reply Brief, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S. Ct. 2335 (No. 19-631), 2020 WL 2041669 ...........................................23

Press Release, CFPB, *CFPB Ratifies Prior Regulatory Actions* (July
7, 2020), https://www.consumerfinance.gov/about-
us/newsroom/cfpb-ratifies-prior-regulatory-actions/..........................................19

Ruth B. Ginsburg, *Some Thoughts on Judicial Authority to Repair
Unconstitutional Legislation*, 28 Clev. St. L. Rev. 301 (1979)...........................22

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

Facebook, Inc., is a technology company with a direct and substantial interest in this case. Facebook's mission is to give people the power to build community and bring the world closer together. To that end, Facebook operates services used by more than 3.2 billion people around the world every month, including more than 255 million in the United States and Canada. People use Facebook's apps and technologies to connect with friends and family, find communities, and grow businesses.

Facebook has a particular interest in ensuring that the Telephone Consumer Protection Act (TCPA) is applied in a manner consistent with the First Amendment. In recent years, Facebook has been sued in multiple jurisdictions for allegedly violating the TCPA's prohibition on making calls to cellphones using an automatic telephone dialing system (ATDS), 47 U.S.C. § 227(b)(1)(A)(iii). *See, e.g.*, *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted on statutory question*, 141 S. Ct. 193 (2020); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017).

In *Barr v. American Association of Political Consultants, Inc.* (*AAPC*), 140 S. Ct. 2335, 2356 (2020), the Supreme Court held that a 2015 amendment to the

---

[1] No one—except for Facebook and its counsel—authored this brief in whole or in part or contributed money for the preparation or submission of this brief.

ATDS restriction rendered that provision unconstitutional by creating a content-based distinction between ATDS calls made to collect government-backed debt (which were exempted from TCPA liability) and most other ATDS calls (which remained prohibited and subject to liability). The Court held that the discriminatory exemption should be severed from the statute and could no longer apply prospectively.

Appellant Rash Curtis & Associates has argued that *AAPC*'s holding that the amended version of the ATDS restriction violated the First Amendment means that callers cannot be subject to liability for any call made using an ATDS device between November 2, 2015 (when the amendment became law) and July 6, 2020 (when the *AAPC* decision severing the exception was issued). *See* Rash Curtis Br. 64-66. Facebook agrees that such calls cannot trigger liability under the TCPA's ATDS restriction. Facebook submits this amicus brief to explain why that conclusion is mandated by the First Amendment and well-established severability doctrine.

**INTRODUCTION**

Facebook submits this brief to address just one of the issues presented in this appeal—the effect of *AAPC*'s First Amendment holding on ATDS calls placed between November 2, 2015 and July 6, 2020. *See* Rash Curtis Br. 64-66. Facebook agrees with Rash Curtis that—if the Court reaches that issue—it should apply *AAPC* and hold that the ATDS provision cannot impose liability on calls made during this period.

In *AAPC*, a splintered Supreme Court majority held that the TCPA's differential treatment of government-debt-collection speech and other categories of speech was unconstitutional. To fix that problem going forward, the Court invalidated and severed the debt-collection exception to the ATDS restriction, 47 U.S.C. § 227(b)(1)(A)(iii). After that exception was enacted in 2015, the ATDS restriction imposed a content-based distinction between ATDS calls made to collect government-backed debt (which Congress exempted from liability) and most other ATDS calls (which were left subject to liability). *AAPC* made clear that the post-severance ATDS restriction would now apply equally to all callers, including those making ATDS calls to collect government-backed debt. Crucially, however, *AAPC* was a pre-enforcement facial challenge seeking only *prospective* relief. As a result, the Court did not have to resolve—and did not resolve—the effect of its

3

constitutional analysis on calls made between November 2, 2015 (when the content-based exception was added) and July 6, 2020 (when the exception was invalidated).

Facebook agrees with Rash Curtis that the ATDS restriction cannot impose liability on calls made during that period. *AAPC* held that the restriction violated the First Amendment during that time, and a party may not be held liable for violating a statutory provision that was unconstitutional at the time of the alleged violation. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972).

*AAPC*'s prospective severability holding does not change that bedrock constitutional principle. Nor does it change the historical fact that calls made between 2015 and 2020 were subjected to unconstitutional unequal treatment under the then-operative statute. Moreover, even if it were permissible to apply a severability holding retroactively in certain circumstances, that approach is plainly inappropriate here. If *AAPC*'s severability holding were made retroactive—as if the government-debt exception had never been enacted in 2015—that would violate the due process rights of government-debt collectors who made calls that were expressly authorized by the exception. Five Justices rejected that result in *AAPC*. And although Justice Kavanaugh's opinion contained dicta suggesting that the ATDS restriction could be enforced *only* against post-2015 calls that were *not* collecting government debt, that dicta was not joined by a majority of the Court, is not binding,

and is inconsistent with the majority's holding that unequal treatment of calls based on their content violates the First Amendment.

The only way to implement *AAPC*'s equal-treatment mandate retrospectively is to hold that the ATDS provision cannot impose liability for *any* ATDS calls made during the period that the government-debt exception was in effect. Here, that means that this Court—if it reaches the issue at all—should hold that callers cannot be subject to liability for ATDS calls made between November 2, 2015 and July 6, 2020.

## ARGUMENT

## THE ATDS PROVISION CANNOT BE ENFORCED AGAINST CALLS MADE WHEN THAT PROVISION WAS UNCONSTITUTIONAL

### A. *AAPC* Held That The ATDS Restriction Violated The First Amendment Between November 2015 And July 2020

*AAPC* was a declaratory-judgment action brought against the Attorney General and Federal Communications Commission by a coalition of entities that engage in political speech and wanted to use ATDS calls to promote their own political views and those of their clients. Congress enacted the TCPA's ATDS restriction in 1991, but in 2015 it amended that provision to create an exemption for calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588; *see* 47 U.S.C. § 227(b)(1)(A)(iii). The *AAPC* plaintiffs argued that the

combination of this content-based exemption with the broader ATDS restriction rendered the provision unconstitutional, because it impermissibly treated government-debt-collection calls more favorably than other categories of calls. They filed a pre-enforcement challenge seeking a declaration that the restriction violated the First Amendment and a permanent injunction blocking its enforcement against them. *AAPC* was thus only about *prospective* relief, and did not address liability for ATDS calls that had already been made.

The Fourth Circuit agreed with the plaintiffs' First Amendment argument and held that the provision "facially distinguishes between phone calls on the basis of their content" and could not survive strict scrutiny. *Am. Ass'n of Pol. Consultants, Inc. v. FCC*, 923 F.3d 159, 166, 170 (4th Cir. 2019). But the Fourth Circuit determined that severance principles required it to sever the debt-collection *exception*, rather than the underlying ATDS *restriction*. *Id.* at 170-72.

On July 6, 2020, a splintered Supreme Court affirmed the Fourth Circuit, with four different Justices issuing opinions. Although none of those opinions commanded a majority, seven Justices agreed on a bottom-line judgment rejecting the *AAPC* plaintiffs' request for injunctive relief, invalidating the 2015 exception for government-backed-debt calls, and holding that the ATDS restriction could *prospectively* be enforced against all ATDS calls.

6

Justice Kavanaugh issued the lead opinion announcing the Court's judgment with respect to both (1) the First Amendment question, and (2) severability. On the first issue, Justice Kavanaugh's opinion commanded a plurality and concluded that Congress's addition of the government-debt exception in November 2015 rendered the ATDS provision an unconstitutional content-based restriction on speech. *AAPC*, 140 S. Ct. at 2347. As the plurality explained, discriminating between calls made to collect government-backed debt and for other purposes violated the "First Amendment['s] equal-treatment principle." *Id.* at 2354-55. The plurality's analysis of this point was joined in full by the Chief Justice and Justices Thomas and Alito. Justices Sotomayor and Gorsuch concurred with the plurality's bottom-line judgment that the ATDS restriction was unconstitutional, albeit without adopting Justice Kavanaugh's reasoning. *See id.* at 2356-57 (Sotomayor, J.); *id.* at 2363-67 (Gorsuch, J.); *see also id.* at 2343, 2347 (Kavanaugh, J.) ("*Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.*" (emphasis added)).[2]

Next, Justice Kavanaugh's opinion turned to the remedy for this unequal-treatment problem—and, in particular, to the question of whether and how the ATDS provision could be applied going forward. According to the opinion, the problem

---

[2] Justice Breyer wrote an opinion (joined by Justices Ginsburg and Kagan) dissenting from Justice Kavanaugh's First Amendment analysis. *Id.* at 2357-63.

could be fixed either "by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *Id.* at 2354. Applying severability principles, including the severability clause in the Communications Act of 1934, 47 U.S.C. § 608, the opinion concluded that the government-debt exception should be invalidated and severed from the ATDS restriction. *Id.* at 2352-56. Although that approach did not allow the plaintiffs to make ATDS calls going forward, it nonetheless "fully addresse[d]" the "unequal treatment" injury that was "at the heart of their suit." *Id.* at 2355. The only Justices joining this portion of Justice Kavanaugh's opinion were the Chief Justice and Justice Alito. *Id.* at 2342, 2348-56. Four other Justices, however—Justices Ginsburg, Breyer, Sotomayor, and Kagan—agreed with its bottom-line judgment that the 2015 government-debt exception should be severed from the rest of the statute, which could continue to operate prospectively. *Id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.).

Because *AAPC* involved only a request for prospective declaratory and injunctive relief, the Court had no need to resolve whether or how its equal-treatment holding should apply to calls made between November 2, 2015 (when the government-debt exception was enacted) and the date of the *AAPC* decision. In particular, the Court had no need to address whether its severability holding invalidating the government-debt exception would apply retroactively to calls made during that period.

8

Nonetheless, Justice Kavanaugh's opinion commented on these issues in dicta contained in a two-sentence footnote. *See id.* at 2355 n.12. The footnote stated that although ATDS calls to collect government debt could incur liability prospectively, "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate." *Id.* At the same time, however, the footnote seemed to assert that all other calls that were subjected to unequal treatment from 2015 to 2020 should continue to trigger liability, stating that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Notably, only two Justices joined Justice Kavanaugh's footnote.

Justice Gorsuch's separate opinion (joined in part by Justice Thomas) focused almost entirely on the severability issue. *Id.* at 2363, 2365-68. He explained that instead of severing the 2015 government-debt exception, the proper remedy for the First Amendment violation would have been to simply enjoin any enforcement of the ATDS provision against the plaintiffs. *Id.* at 2365. Justice Gorsuch also briefly criticized Justice Kavanaugh's footnote addressing calls made while the unconstitutional version of the ATDS provision was in effect. He noted that Justice Kavanaugh's "suggest[ion]" that "the ban on government-debt collection calls

announced today might be applied only prospectively" was difficult "to square with the judicial power." *Id.* at 2366. And he further explained that "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.*

### B. Callers Cannot Be Held Liable For Violating The Unconstitutional ATDS Provision

*AAPC* made clear that the ATDS restriction was unconstitutional because it subjected callers to *unequal treatment* based on the content of their calls. *See, e.g.*, 140 S. Ct. at 2343 (Kavanaugh, J.) ("Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."); *see also id.* at 2356-57 (Sotomayor, J.) *id.* at 2364 (Gorsuch, J.). As Justice Kavanaugh's opinion repeatedly emphasized, *AAPC* was "an *equal-treatment* case," and "Congress violated th[e] First Amendment['s] *equal-treatment* principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls." *Id.* at 2354 (emphases added); *see also id.* at 2355 ("[T]he First Amendment complaint at the heart of [plaintiffs'] suit was unequal treatment.").

The unequal treatment that *AAPC* held unconstitutional was produced by the convergence of the original, generally applicable ATDS restriction (enacted in 1991) and the content-based exception for calls made to collect government-backed debt

(enacted in 2015). In other words, neither the ATDS restriction nor the government-debt exception, on their own, violated the First Amendment. Rather, the violation arose from the unequal treatment that resulted after they were combined. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.* (*PCAOB*), 561 U.S. 477, 509 (2010) (recognizing the convergence of "a number of statutory provisions that, working together, produce a constitutional violation"); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2222-23 (2020) (Thomas, J., concurring in part and dissenting in part) ("In some instances, a constitutional injury arises as a result of two or more statutory provisions operating together.").

Courts cannot now enforce that same unequal-treatment regime against calls made between 2015 and 2020. As the Supreme Court has explained, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (citation omitted); *see also Grayned*, 408 U.S. at 107 n.2 (assessing the validity of a conviction by "consider[ing] the facial constitutionality of the ordinance *in effect when [the defendant] was arrested and convicted*" (emphasis added)).

Here, the ATDS restriction in effect between 2015 and 2020 violated the First Amendment. And courts plainly cannot hold defendants liable for violating

unconstitutional laws.[3]  Because the ATDS restriction was unconstitutional between November 2, 2015 and July 6, 2020, calls made during that period cannot trigger liability under that provision.

### C.  *AAPC*'s Severability Holding Cannot Retroactively Cure The First Amendment Violation

*AAPC*'s severability holding established that the ATDS provision would continue to operate—prospectively—once the government-debt exception was invalidated and excised from the statute.  According to Justice Kavanaugh's opinion, that forward-looking remedy "fully addresses" the "unequal treatment" problem that was "at the heart of [the plaintiffs'] suit" by ensuring that "[plaintiffs'] speech is *now* treated equally with debt-collection speech."  *AAPC*, 140 S. Ct. at 2344, 2355 (emphasis added).  Because *unequal* treatment was the constitutional problem, *equal* treatment was the solution.  *See id.* at 2354-56.

But *AAPC*'s severability holding cannot retroactively create liability for ATDS calls made when the ATDS provision was unconstitutional.  Doing so would violate the bedrock rule that the legal effect of a defendant's conduct must be assessed "under the law that existed when the conduct took place."  *Landgraf*, 511 U.S. at 265 (citation omitted).  Retroactively applying *AAPC*'s severability

---

[3] *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine because election law violated First Amendment); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 384 (1977) (reversing attorney discipline because bar rule violated First Amendment).

holding would also violate due process, by imposing liability on ATDS calls made to collect government-backed debt. Indeed, all five Justices who addressed the issue *agreed* that the severability holding could not apply retroactively. *See AAPC*, 140 S. Ct. at 2355 & n.12 (Kavanaugh, J., joined by Roberts, C.J., and Alito, J.); *id.* at 2366 (Gorsuch, J., joined by Thomas, J.).

1. Although *AAPC* avoided wholesale invalidation of the ATDS restriction by severing the government-debt exception, that statutory "fix" does not change the historical fact that the provision *was* unconstitutional between 2015 and 2020. During that time, the ATDS provision distinguished between nominally "legal" and "illegal" calls based on the content of the caller's speech. *AAPC* held that this distinction was illegal. Severing the exception eliminates the constitutional problem going forward, but does not change the fact that the law in effect at the time the calls were made—and that prohibited the calls—was unconstitutional and therefore unenforceable. "The past cannot always be erased by a new judicial declaration." *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940).

To be sure, the Supreme Court has held that judicial decisions conclusively declaring the meaning of a statutory provision are typically retroactive and govern conduct predating issuance of the decision. *See Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). But that is because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the

decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994). A severability holding is fundamentally different. It does not purport to state what the provision always meant, but rather reflects the court's view of how Congress would have wanted to modify the statute to eliminate the constitutional defect going forward. *See PCAOB*, 561 U.S. at 508-10. In that sense, a severability holding is more akin to legislation—both *change* the applicable statutory law in force. And as the Supreme Court has made clear, legislation is ordinarily *prospective*. *Rivers*, 511 U.S. at 311-12 (noting that "statutes operate only prospectively, while judicial decisions operate retrospectively" (citation omitted)).

2. Settled precedent confirms that using severance to restore a statutory provision to constitutional health does not somehow erase what already occurred under the unconstitutional regime. Prospectively curing a constitutional problem cannot create liability for conduct that was made unlawful by a statute that was invalid at the time the conduct took place.

Consider *Grayned*, 408 U.S. at 107, which involved a municipal ordinance that banned picketing near schools but exempted picketing related to labor disputes. A criminal defendant convicted for participating in a banned protest challenged the speech restriction as a defense to retrospective liability. *Id.* at 105. The Supreme Court agreed with the defendant, holding that the ordinance violated equal protection

14

by impermissibly distinguishing between labor picketing and other peaceful picketing. *Id.* at 107 (citing *Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972)).

Notably, the municipality in *Grayned* had *already* amended the ordinance to remove the labor-picketing exception before the case reached the Supreme Court but after the conduct at issue. *See id.* at 107 n.2. The municipality had thus enacted the functional equivalent of judicial severance—it had eliminated the content-based exception for certain speech and thus restored equal treatment going forward. In other words, the posture of the case before the Supreme Court would have been the same if a state court had already invalidated and severed the exception on state law grounds. But even though the equal-treatment problem in the unconstitutional ordinance had already been cured by legislative amendment, the Supreme Court could not apply that prospective fix (or any hypothetical severability analysis) to Grayned's case. "Necessarily," the Court explained, "we must consider the facial constitutionality of the ordinance *in effect when [Grayned] was arrested and convicted*." *Id.* (emphasis added). The municipality's "amendment and deletion ha[d], of course, *no effect* on [Grayned's] personal situation." *Id.* (emphases added).

*Grayned* is instructive because it shows that prospectively eliminating the equal-treatment problem in an unconstitutional statute does not change the historical fact that certain parties were treated unequally under the unconstitutional regime. It

also confirms the bedrock rule that liability cannot be imposed for conduct that was made unlawful by an unconstitutional statute. *See supra* at 10-14.

Those same principles apply here. Even though *AAPC* implemented its equal-treatment holding prospectively by severing the government-debt exception, that "deletion has, of course, no effect on [the] personal situation" of anyone who made an ATDS call before the Supreme Court ruled, when the statute still unlawfully discriminated on the basis of content. *Grayned*, 408 U.S. at 107 n.2. As in *Grayned*, this Court must still "consider the facial constitutionality of the [ATDS restriction] in effect when" a TCPA defendant made calls between 2015 and 2020. *Id.* And for that period, *AAPC* has already answered the constitutional question: The restriction was unconstitutional during that time because it subjected callers to unequal treatment based on the content of their calls. Thus, here, as in *Grayned*, the Court should enforce the constitutional equal-treatment requirement retrospectively by exempting the defendant from liability for violating an "invalid" statute. *Id.* at 107; *see also Creasy v. Charter Commc'ns, Inc.*, No. 20-cv-1199, 2020 WL 5761117, at *3-6 (E.D. La. Sept. 28, 2020) (relying on *Grayned* and concluding that ATDS restriction is unenforceable against calls made during period it was unconstitutional).

The Supreme Court has recently reaffirmed *Grayned*'s holding on these points. In *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), the Court explained that "a defendant convicted under a law classifying on an impermissible basis may

assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." *Id.* at 1699 n.24.  It again emphasized that liability for past conduct must be assessed based on the constitutionality of the law on the books *at the time of the violation*, not on how a legislature might respond to a subsequent finding of unconstitutionality.   As the Court explained, it is "irrelevant . . . whether the legislature likely would . . . cure[] the constitutional infirmity by excising" the exemption or invalidating the prohibition. *Id.*  Either way, the Court "must consider the facial constitutionality of the [law] in effect when [the defendant] was arrested and convicted." *Id.* (quoting *Grayned*, 408 U.S. at 107 n.2).

In other contexts, the Supreme Court has repeatedly confirmed that even when it invalidates and severs an unconstitutional statutory provision prospectively, that severance does not somehow retroactively cure a constitutional violation that occurred in the past.   Rather, the Court has recognized the need to craft a retrospective remedy to address that violation.

In *United States v. Booker*, 543 U.S. 220, 243-44 (2005), for example, the Court held that a statute making the Sentencing Guidelines mandatory for sentencing judges violated the Sixth Amendment requirement that juries find certain sentencing facts.  After severing the statutory provision that made the Sentencing Guidelines mandatory, the Court rejected the notion that its prospective severance "fix" somehow cured the sentences that had been handed down under the unconstitutional

regime. Instead, it held that defendants who were sentenced under the pre-severance sentencing regime, and whose cases were not yet final, were entitled to be resentenced. *Id.* at 268.

The Supreme Court took a similar approach last Term in *Seila Law*. There, a law firm challenged a subpoena issued by the CFPB in 2017, arguing that the subpoena was unlawful because the CFPB statute insulated the agency's Director from removal without cause. *Seila Law*, 140 S. Ct. at 2194. The Court agreed with the challenger and held that the CFPB's leadership structure violated the separation of powers. *Id.* at 2197. The Court then addressed whether or how the CFPB could continue to operate in the future, in light of the constitutional flaw in the statute. The Court determined that the Director's for-cause removal protections could be severed and invalidated without striking down the remainder of the statutory scheme. *Id.* at 2211.

Crucially, however, neither the Court nor the parties believed that this severability remedy would somehow retroactively cure the unconstitutional subpoena, which the CFPB had issued years *before* the Court's decision. Recognizing that a severability decision would not be retroactive, the CFPB itself accepted that the subpoena would be valid only if it were ratified by a Director properly "accountable to the President." *Id.* at 2208; *see* CFPB Reply Br. 23, *Seila Law*, 140 S. Ct. 2183 (No. 19-7), 2020 WL 774433, at *23. And the Court apparently

agreed, remanding the case for consideration of whether such ratification had already occurred. *Seila Law*, 140 S. Ct. at 2208. That remand decision would make no sense if the Court's severability ruling—remedying the unconstitutionality of the CFPB's leadership structure—had retroactive effect. *See also Lindenbaum v. Realgy, LLC*, No. 19-cv-2862, 2020 WL 6361915, at *6 (N.D. Ohio Oct. 29, 2020) (relying on *Seila Law* to conclude that ATDS restriction is unenforceable for period it was unconstitutional), *appeal docketed*, No. 20-4252 (6th Cir. Nov. 30, 2020).[4]

The Federal Circuit recently took the same course in *Arthrex, Inc., v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *cert. granted*, --- S. Ct. --- (No. 19-1458), 2020 WL 6037208 (Oct. 13, 2020). There, the court held that the statute addressing the appointment of administrative patent judges violated the Appointments Clause. *Id.* at 1335. As a remedy, the court severed the removal protections for the administrative patent judges, thereby rendering the statute constitutional going forward. *Id.* at 1338. But like in *Seila Law*, the court did *not* presume that its severance remedy somehow provided retrospective relief for litigants who had been subject to the unconstitutional regime. To the contrary, the

---

[4] On remand, rather than try to enforce its pre-severance decisions, the CFPB formally ratified those decisions under the new constitutionally structured leadership. *See* Press Release, CFPB, *CFPB Ratifies Prior Regulatory Actions* (July 7, 2020), https://www.consumerfinance.gov/about-us/newsroom/cfpb-ratifies-prior-regulatory-actions/.

court vacated and remanded the matter "[b]ecause the Board's decision in this case was made by a panel of [administrative patent judges] that were not constitutionally appointed at the time the decision was rendered." *Id.* at 1338-39.

Three judges later addressed whether severability can be retroactive when concurring in the denial of rehearing en banc. *See Arthrex, Inc., v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir. 2020) (en banc) (per curiam). They noted that the "curative severance of the statute, does not 'remedy' the harm to Arthrex, whose patent rights were adjudicated under an unconstitutional scheme." *Id.* at 767 (O'Malley, J.). Rather, the court's "decision that the statute can be *rendered* constitutional by severance does not remedy *any past harm*—it only avoids continuing harm in the future. It is only meaningful prospectively, once severance has occurred." *Id.* (second emphasis added); *see also Lindenbaum*, 2020 WL 6361915, at *6.

Notably, the Government agreed with that position. *See Arthrex*, 953 F.3d at 767-68. Indeed, the Government "expressly rejected" the argument that the "severance order applies retroactively." *Id.* Instead, it acknowledged that invalidation of the unconstitutional statutory provisions was not "sufficient to

eliminate the impact of the asserted constitutional violation on the original agency decision." *Id.* at 768 (citation omitted).[5]

3.  Settled principles of constitutional law and severability doctrine thus confirm that judicial severability cannot retroactively eliminate a constitutional violation that occurred in the past or trigger liability for violating laws that were unconstitutional at the time the violation took place.  But even if retroactive severability were theoretically an option in some circumstances, it would be unconstitutional here.  Making *AAPC*'s severability holding retroactive would violate due process and fair notice principles by imposing liability on calls made to collect government-backed debt at a time when those calls were expressly authorized by Congress.  The only way to implement *AAPC*'s constitutional holding to ATDS calls made between November 2015 and July 2020 is to treat them equally and exempt all such calls from liability.

"[W]hen the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment . . . ." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)

---

[5]  The D.C. Circuit took the same course in *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012).  There, the court held that the statutory scheme establishing Copyright Royalty Judges violated the Appointments Clause.  *Id.* at 1334.  After curing the constitutional infirmity by severing certain removal restrictions, the court did *not* give that severance retroactive effect.  Instead, it held that because of the constitutional problem "*at the time of decision*, we vacate and remand the determination challenged here" to be addressed under the newly constitutional regime.  *Id.* (emphasis added).

(citation omitted). *AAPC* implemented the equal-treatment remedy going forward by severing the government-debt exception and thereby imposing liability on all future ATDS calls equally. It might be argued that this same equal-treatment remedy could be applied retroactively, by imposing liability on all calls made during the period that the government-debt exception was in effect.

But that approach is *not* available here, because it would violate core principles of constitutional due process and fair notice. Most problematically, it would penalize government-debt collectors who reasonably relied on the exception while it was in effect. Such callers would rightly protest if threatened with monetary penalties based on a later judicial decision that invalidated the exception. After all, "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 46 (D.C. Cir. 2016) (Kavanaugh, J.) (quoting *Landgraf*, 511 U.S. at 265), *reinstating panel decision on due process point en banc*, 881 F.3d 75, 83 (D.C. Cir. 2018).[6]

Notably, both the *AAPC* plaintiffs *and* the Government expressly recognized that retroactively imposing liability on collectors of government-backed debt would

---

[6] *See also Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (noting that "[d]eprivation of the right to fair warning" can result from "an unforeseeable and retroactive judicial expansion of statutory language"); Ruth B. Ginsburg, *Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation*, 28 Clev. St. L. Rev. 301, 307-08 (1979) (discussing "due process related concepts of reliance and fair notice" that limit the retroactive effect of invalidating a statutory benefit).

be untenable. *See* AAPC Br. 39, *AAPC*, 140 S. Ct. 2335 (No. 19-631), 2020 WL 1478621, at *39 (stating that this approach would "create[] significant due process problems" and "violate principles of fair notice"); Gov't Reply Br. 24, *AAPC*, 140 S. Ct. 2335 (No. 19-631), 2020 WL 2041669, at *24 ("It is doubtful that a person who made automated calls to collect government-backed debts before the exception was held invalid could be said to have violated the TCPA."). Indeed, the five Justices who addressed the issue all agreed that severance of the government-debt exception should not be retroactive as to all callers. *See supra* at 13. No one endorsed retroactive application of *AAPC*'s severability holding—and rightly so.

### D. Justice Kavanaugh's Non-Binding Footnote 12 Is Irreconcilable With *AAPC*'s Equal-Treatment Holding

As explained above, footnote 12 of Justice Kavanaugh's opinion seemed to envision that the ATDS restriction should *not* impose liability on ATDS calls made to collect government debt during the period the restriction was unconstitutional, but *should* impose liability on ATDS calls made to convey other types of messages. *See supra* at 9; *AAPC*, 140 S. Ct. at 2355 n.12. Under that approach, courts would, in essence, continue enforcing the unconstitutional version of the ATDS restriction for calls made between November 2015 and July 2020. Justice Kavanaugh offered no reasoning for this conclusion, which is dicta (because *AAPC* involved only prospective relief, not retrospective liability) that was endorsed by only three

Justices (not a majority). *See supra* at 9.[7] But whatever the rationale, that approach is completely foreclosed by the *majority* holding in *AAPC*.

Justice Kavanaugh's footnote directly contradicts *AAPC*'s core constitutional holding, which mandates equal treatment of all calls without regard to content. Under the footnote's approach, the dividing line for liability would continue to be the *content* of the call. A 2017 ATDS call that said "Please pay your government debt" would be exempt from liability, but a 2017 ATDS call that said "Please donate to our political campaign" would be punishable by up to $1,500 per call. *AAPC*, 140 S. Ct. at 2346 (Kavanaugh, J., plurality op.); *see* 47 U.S.C. § 227(b)(3). "That is about as content-based as it gets." *AAPC*, 140 S. Ct. at 2346. As Justice Gorsuch explained, "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id.* at 2366.

---

[7] Various district courts have rightly recognized that the plurality's footnote is not controlling precedent. *See, e.g.*, *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020) (recognizing that footnote is not binding); *Lindenbaum*, 2020 WL 6361915, at *5 ("footnote 12 constitutes non-binding *obit*[e]*r dictum*"); *Creasy*, 2020 WL 5761117, at *2, 4 n.4 (calling the footnote a "few lines of nonbinding dicta").

Two hypotheticals help illustrate the problem with the approach suggested in Justice Kavanaugh's footnote. First, imagine that when Congress added the government-debt exception in 2015, it also added a severability clause stating:

> If this government-debt exception is found unconstitutional, it shall be severed from the remainder of the statute, and ATDS calls shall be subject to liability for the entire period during which the unconstitutional version of the statute was in effect, *except for calls made solely to collect a debt owed to or guaranteed by the United States*.

The italicized portion of that clause replicates the very equal-treatment violation that *AAPC* rejected. *See* 140 S. Ct. at 2346-47; 47 U.S.C. § 227(b)(1)(A)(iii). It would plainly be unconstitutional. But if it would violate the First Amendment for Congress to include such an amendment, surely a court cannot do the same through severance. After all, the whole purpose of severability doctrine is to guide courts when *fixing* constitutional violations—not to provide a basis for perpetuating those same violations.

Second, imagine that in 2015 Congress had instead created a content-based exception for ATDS calls soliciting campaign donations for, say, Republicans, while leaving intact liability for calls soliciting donations for Democrats. If both Republican and Democratic campaigns made ATDS calls under this regime—before the exception was challenged—surely no court would (1) invalidate the exception for Republican calls going forward, yet nonetheless (2) impose liability only for Democratic calls—while exempting Republican calls—that had already been made.

25

That blatantly discriminatory remedy is what Justice Kavanaugh's footnote would require—but it squarely conflicts with *AAPC*'s constitutional holding.

Justice Kavanaugh offered no explanation for footnote 12, so it is hard to know precisely why he believed that it would be permissible to impose liability on certain ATDS calls made between November 2015 and July 2020 depending on the content of those calls. But it is indisputable that—under the constitutional holding endorsed by six Justices—such content-based discrimination violates the First Amendment. *See AAPC*, 140 S. Ct. at 2347 (Kavanaugh, J.); *id.* at 2356-57 (Sotomayor, J.); *id.* at 2363-67 (Gorsuch, J.). In short, an unreasoned footnote endorsed by only three Justices addressing an issue that was not presented cannot overcome the binding First Amendment holding agreed to by six Justices.

### E. None Of The Other Rationales For Applying The Severability Holding Retroactively Withstands Scrutiny

Since *AAPC* was decided last July, district courts have split on how the decision applies to ATDS calls made while the unconstitutional unequal-treatment regime was in effect. The better-reasoned decisions hold that the ATDS restriction cannot impose liability for calls made while the restriction was unconstitutional. Those decisions recognize that *AAPC*'s severability holding did not erase the provision's period of unconstitutionality. *See, e.g.*, *Lindenbaum*, 2020 WL 6361915, at *7 ("The Court cannot wave a magic wand and make that constitutional violation disappear."). And they recognize that Justice Kavanaugh's footnote is non-binding

dicta at odds with *AAPC*'s First Amendment holding.  *Id.* at *5-7; *see also Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 20-cv-38, 2020 WL 7346536, at *3 (M.D. Fla. Dec. 11, 2020); *Creasy*, 2020 WL 5761117, at *4-6.

Although a few district courts have ruled the other way, none has squarely confronted the arguments detailed above.  No court has explained how applying *AAPC*'s severability holding retroactively avoids due process and equal-treatment problems.  In *Trujillo v. Free Energy Savings Co.*, for instance, the district court *all but conceded* the due process problem that would arise from imposing liability on government-debt collectors, but declined to address it head-on because the particular defendant at issue "is not a government-debt collector."  No. 19-cv-2072, 2020 U.S. Dist. LEXIS 239730, at *10 (C.D. Cal. Dec. 21, 2020).  But that approach is plainly inadequate.  It is impossible to know whether a retroactive severability holding solves the equal-treatment problem identified in *AAPC* without knowing whether that holding validly treats all calls—whether made to collect government-debt or not—the same way.

Nor has any court persuasively explained how imposing liability under an unconstitutional statutory provision can be squared with Supreme Court precedent.  *See supra* at 14-19.  In *Trujillo*, for example, the court concluded that *Grayned* and *Seila Law* were "unpersuasive" authority because they did not involve statutes with "a finite period of constitutional infirmity bookended by periods of validity."

2020 U.S. Dist. LEXIS 239730, at \*10-11 & n.3.  But *Trujillo* never explains why that distinction should matter, and there is no reason it should.  In *Grayned*, it had "no effect" on the Court's analysis that the unconstitutionality of the ordinance at issue had since been cured by an amendment, 408 U.S. at 107 n.2, nor would it have made any difference if the ordinance had been constitutional at some earlier time.  The Supreme Court granted retrospective relief in *Grayned* because "the ordinance in effect *when* [the defendant] was arrested and convicted" was unconstitutional *at that time*.  *Id.* (emphasis added).

The other rationales offered for imposing *AAPC*'s severance holding retroactively fail to persuade as well.  For example, some courts have reasoned that, because the debt-collection exception was unconstitutional, it was "void *ab initio*."  *Trujillo*, 2020 U.S. Dist. LEXIS 239730, at \*7.  By this line of reasoning, the 2015 TCPA amendment never modified the ATDS restriction, so the pre-amendment version remained fully operative and enforceable against *any* ATDS calls—including those made to collect government-backed debt.  But as discussed above, *see supra* at 21-23, due process forecloses that rationale—because it would mean that government-debt collectors *would* be liable for calls they made while expressly exempt from liability.  All five Justices who addressed that issue made clear that

government-debt collectors cannot be punished for making such calls. *See supra* at 13.[8]

Finally, some courts have suggested that this Court's decision in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), "implicit[ly]" resolved the retroactivity issue presented here. *See, e.g.*, *Trujillo*, 2020 U.S. Dist. LEXIS 239730, at *9. That is incorrect. *Duguid* is a putative class action in which the plaintiff alleges that he received security texts from Facebook in violation of the ATDS restriction. Those alleged texts "predate the debt-collection exception," but the plaintiff also seeks to represent a class for alleged violations that occurred in part after the 2015 amendment, and requests an injunction barring future ATDS calls. *Duguid*, 926 F.3d at 1153.

---

[8] Courts adopting the void-*ab-initio* logic have also relied heavily on *Frost v. Corp. Commission of Okla.*, 278 U.S. 515, 528 (1929), where the Court invalidated a statutory provision exempting certain corporations from a general "public necessity" licensing requirement for operating a cotton gin, and canceled a license issued pursuant to the exemption. But *Frost* did not involve the imposition of retroactive criminal or civil liability for conduct expressly authorized by a congressional statute that was later invalidated and severed. Indeed, although the Justice Kavanaugh's *AAPC* opinion relied on *Frost* in other respects, it made clear that the 2015 government-debt exception would still protect government-debt collectors from incurring liability for calls made between 2015 and 2020. The opinion concluded that *Frost* "support[s] severing" the 2015 amendment, not that the amendment was inoperative from the get-go. *AAPC*, 140 S. Ct. at 2353 & 2355 n.12.

Like the Supreme Court in *AAPC*, a panel of this Court concluded that the restriction violated the First Amendment and severed the debt-collection exception. *Id.* at 1153-57. The panel then remanded the case for further proceedings. Notably, however, the panel's opinion made no mention of the retroactivity issue, which it had no need to decide because no class had yet been certified. It thus likely intended the district court to be the one to address, in the first instance, the retroactive effect of its constitutional and severability holdings on the alleged post-2015 ATDS calls.

That conclusion squares with the exact same panel's treatment of the retroactive severability issue in *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019), a companion TCPA case argued the same day as *Duguid*. *Gallion* presented the same sort of First Amendment claim as *Duguid*, along with the retroactivity issue about the proper treatment of ATDS calls made after the 2015 amendment. *Id.* at 605. But while the *Gallion* panel resolved the First Amendment claim by relying on its opinion in *Duguid*, it refused to address the retroactivity argument altogether. *See id.* at 606 ("We do not reach Charter's argument that severing the unconstitutional portion of the TCPA raises retroactivity concerns because Charter raised this argument for the first time in its Reply Brief and later in a Rule 28(j) letter."). That approach confirms that the panel did not believe it had already resolved the retroactivity issue in *Duguid*.

## CONCLUSION

Implementing *AAPC*'s equal-treatment mandate retrospectively requires treating all calls the same, regardless of content.  The only way to do that for calls made between November 2, 2015 and July 6, 2020 is to exempt them all from TCPA liability.

Dated:  January 6, 2021                          Respectfully submitted,

                                                 */s/ Roman Martinez*
                                                 Roman Martinez
                                                     *Counsel of Record*
                                                 Andrew B. Clubok
                                                 Susan E. Engel
                                                 Michael Clemente
                                                 Gregory B. in den Berken
                                                 LATHAM & WATKINS LLP
                                                 555 Eleventh Street, NW
                                                 Suite 1000
                                                 Washington, DC 20004
                                                 Telephone:  (202) 637-2200
                                                 roman.martinez@lw.com

             *Counsel for Amicus Curiae Facebook, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-15946

I am the attorney or self-represented party.

**This brief contains** | 6,940 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

　　○ it is a joint brief submitted by separately represented parties;

　　○ a party or parties are filing a single brief in response to multiple briefs; or

　　○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Roman Martinez | **Date** | January 6, 2021
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*