# No. 20-15946

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**IGNACIO PEREZ, on behalf of himself and all others similarly situated,**
*Plaintiff-Appellee,*

*v.*

**RASH CURTIS & ASSOCIATES,**
*Defendant-Appellant.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
YVONNE GONZALEZ ROGERS, DISTRICT JUDGE • CASE NO. 4:16-CV-03396-YGR

---

## APPELLANT'S REPLY BRIEF

---

**HORVITZ & LEVY LLP**
ROBERT H. WRIGHT
FELIX SHAFIR
REBECCA G. POWELL
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

**ELLIS LAW GROUP, LLP**
MARK E. ELLIS
ANTHONY J. VALENTI
LAWRENCE K. IGLESIAS
1425 RIVER PARK DRIVE, SUITE 400
SACRAMENTO, CALIFORNIA 95815
(916) 283-8820

ATTORNEYS FOR DEFENDANT-APPELLANT
**RASH CURTIS & ASSOCIATES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION .............................................................................. 1

ARGUMENT ..................................................................................... 3

I. The district court abused its discretion in admitting
unreliable testimony from Plaintiff's experts. ............................... 3

    A. Because the district court did not make an explicit
reliability finding, prejudice is presumed. Plaintiff has
not rebutted the presumption. .................................................. 3

    B. If the district court found the expert testimony reliable,
admittance on that basis was an abuse of discretion. ............. 4

    C. Basing a methodology around an unfounded
assumption goes to the reliability of expert testimony,
not its weight. .......................................................................... 7

II. The judgment must be reversed with instructions to dismiss
because Plaintiff was never a class member. ................................. 9

    A. Plaintiff's number originated from the field reserved
for non-skip-traced numbers, and the class list
confirmed he is not a class member. ....................................... 9

    B. The district court had no discretion to certify the class
where the sole representative never belonged to it. ............. 13

    C. The district court compounded its abuse of discretion
by refusing to decertify the class. ......................................... 17

    D. At minimum, if it was disputed whether Plaintiff's
number was skip traced, the district court should have
put it to the jury. ................................................................... 19

    E. Class counsel cannot "swap in" another representative
after final judgment. ............................................................. 21

III.   If this Court does not reverse, it should reduce the judgment......23

    A.   The settlement agreement was complete and enforceable...............................................................23

    B.   The damages are unconstitutionally excessive. ...................25

    C.   Damages for calls depending on an unconstitutional version of the TCPA should be excised from the judgment, because federal courts lack jurisdiction to enter judgment on those calls. ...............................................28

    D.   If the Supreme Court's forthcoming opinion holds an ATDS must generate numbers, this Court must reduce the judgment. ......................................................................32

    E.   This Court should reverse the percentage-based attorney fee because this is not a common fund case...........32

CONCLUSION ..........................................................................35

CERTIFICATE OF WORD COUNT ........................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Bakov v. Consol. World Travel, Inc.*,
No. 15 C 2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) ............... 7

*Barr v. American Ass'n of Political Consultants*,
140 S. Ct. 2335 (2020) ................................................................. 28, 30

*Bateman v. American Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ....................................................... 26, 27

*Bergen v. F/V St. Patrick*,
816 F.2d 1345 (9th Cir. 1987) ............................................................. 8

*Birmingham Steel Corp. v. Tennessee Valley Authority*,
353 F.3d 1331 (11th Cir. 2003) ......................................................... 23

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................... 34

*Callie v. Near*,
829 F.2d 888 (9th Cir. 1987) ............................................................ 24

*Camacho v. Hydroponics, Inc.*,
No. 5:20-cv-00980, 2021 WL 940318 (C.D. Cal. Mar. 10, 2021) ........ 31

*Canady v. Bridgecrest Acceptance Corp.*,
No. CVB-19-04378, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020) ......... 30

*Carpenter v. Wabash Ry. Co.*,
309 U.S. 23 (1940) ........................................................................... 32

*Carriuolo v. General Motors Co.*,
823 F.3d 977 (11th Cir. 2016) .......................................................... 18

*Chinitz v. Intero Real Est. Servs.*,
No. 18-cv-05623, 2020 WL 7391299 (N.D. Cal. July 22, 2020) ........... 7

*Creasy v. Charter Commc'ns, Inc.*,
No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020)........... 29, 31

*Dunn v. Blumstein*,
405 U.S. 330 (1972) ................................................................. 16

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977) .............................................. 13, 14, 17

*Est. of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014) ............................................. 3, 4

*Facebook, Inc. v. Duguid*,
No. 19-155 (petition for cert. granted July 9, 2020).......................... 32

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .............................................. 13, 16, 20

*Golan v. FreeEats.com, Inc.*
930 F.3d 950 (8th Cir. 2019) ............................................. 26

*Holtzman v. Turza*,
828 F.3d 606 (7th Cir. 2016) ......................................... 33, 34

*Hussain v. Buick-Cadillac-GMC Truck, Inc.*,
No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020)....... 29, 31

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ............................................. 34

*Krakauer v. Dish Network, L.L.C.*,
No. 1:14-CV-333, 2015 WL 5227693 (M.D.N.C. Sept. 8,
2015) ........................................................................ 7, 27, 28

*Lidie v. California*,
478 F.2d 552 (9th Cir. 1973) ............................................. 23

*Lierboe v. State Farm Mutual Automobile Insurance Co.*,
350 F.3d 1018 (9th Cir. 2003) ...................................... 21, 22

*Lindenbaum v. Realgy, LLC*,
No. 19-CV-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ... 29, 31

iv

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ................................................................. 6

*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) ........................................................... 32

*Mateyko v. Felix*,
924 F.2d 824 (9th Cir. 1991) ............................................................. 20

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ............................................................... 7

*Meyer v. Portfolio Recovery Associates, LLC*,
707 F.3d 1036 (9th Cir. 2012) ........................................................... 26

*Miller v. Mercedes-Benz USA LLC*,
No. CV 06-05382, 2009 WL 1393488 (C.D. Cal. May 15, 2009) ......... 22

*National Federation of Blind v. Target Corp.*,
582 F. Supp. 2d 1185 (N.D. Cal. 2007) .............................................. 22

*Polk v. Ford Motor Co.*,
529 F.2d 259 (8th Cir. 1976) ............................................................... 9

*Richardson v. Byrd*,
709 F.2d 1016 (5th Cir. 1983) ........................................................... 18

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................. 18

*Sandoe v. Boston Sci. Corp.*,
333 F.R.D. 4 (D. Mass. 2019) ...................................................... 12, 20

*Shamblin v. Obama for Am.*,
No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla.
Apr. 27, 2015) ...................................................................................... 7

*Shen v. Tricolor California Auto Group, LLC*,
No. CV 20-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17,
2020) ................................................................................. 29, 30, 31

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................ 34

*Smith v. Microsoft Corp.*,
No. 11-CV-1958, 2013 WL 6497073 (S.D. Cal. Dec. 10, 2013) ............. 7

*Sosna v. Iowa*,
419 U.S. 393 (1975) ...................................................... 14, 15, 16, 17

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
251 U.S. 63 (1919) ............................................................. 25, 26, 27

*Stastny v. Southern Bell Telephone & Telegraph Co.*,
628 F.2d 267 (4th Cir. 1980) ............................................................. 18

*Stoutt v. Travis Credit Union*,
No. 2:20-cv-01280, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021) ..... 30, 31

*Taenzler v. Burlington Northern*,
608 F.2d 796 (8th Cir. 1979) ........................................................... 8, 9

*Trujillo v. Free Energy Sav. Co.*,
No. 5:19-cv-02072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020) ....... 31

*United States v. Bacon*,
979 F.3d 766 (9th Cir. 2020) ............................................................... 3

*United States v. Ruvalcaba-Garcia*,
923 F.3d 1183 (9th Cir. 2019) ............................................................. 3

*Wakefield v. ViSalus, Inc.*,
No. 3:15-cv-1857, 2020 WL 4728878 (D. Or. Aug. 14, 2020) ............. 27

*Wendell v. GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) ............................................................. 9

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026 (9th Cir. 1997) ..................................................... 33, 34

## Rules

Fed. R. Civ. P. 23 .................................................................. 18,19

Fed. R. Civ. P. 23(a) .............................................................. 13

Fed. R. Civ. P. 23(c)(1)(C) ..................................................... 18

Fed. R. Evid. 702 .................................................................. 3, 7

# APPELLANT'S REPLY BRIEF

## INTRODUCTION

In this class action against Rash Curtis & Associates under the Telephone Consumer Protection Act ("TCPA"), the district court made a series of errors that compel reversal, or at minimum significant reductions of the excessive award of $267 million entered against a small business, one-third of which was awarded to counsel. On appeal, Plaintiff Ignacio Perez tries to obfuscate these errors by reciting irrelevant discovery disputes, trial strategy, and the district court's negative reactions to Rash Curtis's defense. Although Plaintiff seeks to muddy the water with this immaterial information, it has no bearing on the legal issues on appeal.

Plaintiff based this class action on the premise that each class member, including himself, was called at skip-traced numbers—i.e., numbers obtained by searching databases. Plaintiff imposed this restriction to avoid litigating individual disputes over whether class members consented to be called. However, Plaintiff's experts used an unreliable methodology to support the skip-tracing premise central to the case. The methodology was unreliable because it was based on a key

assumption unsupported by the record. The district court prejudicially erred by abdicating its gatekeeping role in admitting this unreliable testimony, resulting in untold numbers of individuals being awarded compensation without being class members. Moreover, the judgment must be reversed because the district court erred by allowing Plaintiff to represent the class even though his number was not skip-traced. All available evidence, including Plaintiff's own expert reports, confirms Plaintiff was not a member of the class.

If this Court does not reverse, it should at least reduce the enormous judgment. The district court erroneously (1) refused to enforce a complete settlement agreement, (2) failed meaningfully to apply the legal standard for excessive damages post-trial, (3) entered a judgment for calls made while the TCPA statute was unconstitutional even though it lacked the jurisdiction to do so, (4) ruled that Rash Curtis's dialing systems were an "automatic telephone dialing system" ("ATDS")—a prerequisite under the TCPA—even though they did not generate the numbers they called, and (5) awarded class counsel a percentage-based attorney fee even though this case is not a proper common fund.

# ARGUMENT

## I. The district court abused its discretion in admitting unreliable testimony from Plaintiff's experts.

### A. Because the district court did not make an explicit reliability finding, prejudice is presumed. Plaintiff has not rebutted the presumption.

The judgment should be reversed because the district court failed to exercise its gatekeeping role when it admitted the testimony of Plaintiff's experts identifying calls to skip-traced numbers without explicitly finding it was reliable. (AOB 25–31.) Plaintiff disagrees, arguing that the court made a reliability finding by referencing Federal Rule of Evidence 702 and then admitting the testimony. (AB 38–39.) But this is exactly the sort of *implicit* reliability finding, evidenced only by admittance, that this Court held was a reversible abandonment of a court's gatekeeping function in *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019). (*See* AOB 24.) The failure to explicitly conduct a reliability analysis is *presumptively* prejudicial. *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464–65 (9th Cir. 2014) (en banc), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766, 770 (9th Cir. 2020). Plaintiff can overcome this presumption only by showing it is "more probable than not that the jury would have

3

reached the same verdict even if the evidence had not been admitted."
*Id.* (citation omitted).

Plaintiff cannot reasonably dispute that the unreliable testimony
made all the difference in this case. Class membership was premised on
having been called at a skip-traced number. (1-ER-16–17.) As to this
key issue, the expert testimony was the *only* evidence presented by
Plaintiff to show the number of calls to skip-traced numbers. Even
absent a presumption, prejudice is "at its apex when the district court
erroneously admits evidence that is critical to the proponent's case." *See
Est. of Barabin*, 740 F.3d at 465. And, the jury's verdict as to the
number of violative calls exactly matched the experts' tabulation,
confirming the jury based its verdict on the unreliable evidence. (12-ER-
3099–102; 11-ER-2625.)

**B.** **If the district court found the expert testimony
reliable, admittance on that basis was an abuse of
discretion.**

The expert testimony here was unreliable and should have been
excluded even if the district court made a reliability finding. The
methodology was devised for litigation, rather than based on external
accepted processes. (AOB 28.) And it was based around a false premise,

using *all* numbers stored in fields 5–10 of Rash Curtis's database as a "starting point," (AB 16 (emphasis omitted)), even though the dataset was overbroad. (AOB 28–29.) The parties stipulated that skip-traced numbers were stored in fields 5–10, but *not* that those fields *only* held skip-traced numbers. (AOB 7.) It was undisputed the numbers in those fields came from "a variety of sources." (AOB 14–15.)

Plaintiff's only response is that the subsequent steps were enough to eliminate non-skip-traced numbers because they removed numbers duplicated in fields 1–4. (AB 16–19) But Plaintiff fails to respond to Rash Curtis's explanation of why Plaintiff's experts did *not* eliminate non-skip-traced numbers obtained from a "variety of sources" in fields 5–10 *that were never present in fields 1–4*. (AOB 28–30.) For example, if Rash Curtis called a number for a debtor, but the person who answered said the debtor no longer lived at the address and provided a new number, Rash Curtis would have inputted the new number into fields 5–10 because it was not from a creditor. That number would not be skip-traced, yet it would never have appeared in fields 1–4 and been eliminated. So too with overflow numbers from a creditor. Those numbers would not be skip-traced, yet they would have been untouched

5

by Plaintiff's experts, who never tried to account for these or similar situations. (AOB 29–30.)

On appeal, Plaintiff emphasizes that Rash Curtis did not provide a rebuttal expert to come up with an alternate method for identifying skip-traced numbers. (AB 16, 32.) But it is the *proponent* of the evidence "who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The district court must act as a gatekeeper and assess the soundness of the methodology, regardless of whether the defense presents an alternate methodology.[1]

Plaintiff cannot overcome the abuse of discretion here simply because other courts on different facts may have allowed these witnesses to testify about *different* defendants' call logs. Moreover, many of Plaintiff's cited cases, (AB 36–37), are further irrelevant because they analyzed inapposite issues, such as whether

---

[1] Plaintiff repeatedly claims the district court did not believe the testimony of Rash Curtis's employees. (AB 25–27, 39.) This is irrelevant to the legal questions on appeal. Plaintiff offers no authority to support the implication that a court can admit unreliable expert testimony simply because it, in the position of a juror, would not have believed the other side's percipient witnesses; reliability is not relative. Plaintiff's focus on this distraction underscores the error in admitting the testimony.

Verkhovskaya properly used LexisNexis, or whether Snyder could speak to industry standards about opt-in text messages. *See, e.g.*, *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623, 2020 WL 7391299, at *5–7 (N.D. Cal. July 22, 2020); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2015 WL 5227693, at *3 (M.D.N.C. Sept. 8, 2015); *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015); *Smith v. Microsoft Corp.*, No. 11-CV-1958, 2013 WL 6497073, at *5 (S.D. Cal. Dec. 10, 2013). And notably, in *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *8 (N.D. Ill. Mar. 21, 2019), while the court admitted call log tabulation from Weir, it *excluded* Snyder's testimony as unreliable for the same reason the district court should have here: his method depended on assumed facts. "An expert opinion that simply accepts and regurgitates facts without any testing, corroboration, or analysis is suspect and fails to satisfy Rule 702." *Id.* at *9.

## C. Basing a methodology around an unfounded assumption goes to the reliability of expert testimony, not its weight.

Expert testimony is unreliable when it "rests on unsupported assumptions and unsound extrapolation." *McGlinchy v. Shell Chem.*

*Co.*, 845 F.2d 802, 807 (9th Cir. 1988). Plaintiff is thus wrong that expert methodology constructed around illusory "factual underpinnings" goes to weight. (AB 35, 38.) Plaintiff's only cited authority is *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987). But this footnote is dicta, distinguishable, and cites distinguishable out-of-circuit cases.

In *Bergen*, the trial court excluded expert testimony about damages because it relied on hearsay. *Bergen*, 816 F.2d at 1352. On appeal, this Court deferred to that decision, but in dicta noted that it would not have been an abuse of discretion to admit the testimony because the reliability of hearsay goes to its weight. *See id.* at 1352 & n.5. The issue here is the reliability of Plaintiff's methodology, not the weight to be given hearsay. Plaintiff's experts relied on a fabricated assumption that all numbers in fields 5–10 were skip-traced, when the *only* evidence, hearsay or not, was that they came from a "variety of sources."

*Bergen* cited two inapplicable out-of-circuit cases. In *Taenzler v. Burlington Northern*, 608 F.2d 796, 798 n.3 (8th Cir. 1979), the appellant argued that expert testimony about "the whole subject of lost

8

earning capacity" was inadmissible as inherently uncertain. The Eighth
Circuit rejected that extreme argument, holding that admissibility of
expert testimony "does not depend on the relative certainty of the
subject matter." *Id.* Here, Rash Curtis does not challenge a whole
subject of expert testimony. In *Polk v. Ford Motor Co.*, 529 F.2d 259,
271 (8th Cir. 1976), appellant argued expert opinion about a defective
roof should be excluded because it was factually unsupported. The court
*agreed* with the premise that "[t]here must, of course, be sufficient facts
. . . to take such testimony out of the realm of guesswork and
speculation," but concluded such facts existed. *Id.*

Here, the experts' failure to devise a method that isolates skip-
traced numbers does not implicate "what the experts say, but the basis
they have for saying it." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d
1227, 1232 (9th Cir. 2017) (citation omitted). That basis is unreliable.

## II. The judgment must be reversed with instructions to dismiss because Plaintiff was never a class member.

### A. Plaintiff's number originated from the field reserved for non-skip-traced numbers, and the class list confirmed he is not a class member.

The judgment should also be reversed because the district court
abused its discretion by certifying and refusing to decertify the class

where Plaintiff was not called at a skip-traced number and was therefore not a class member. (AOB 32–44.)

In response, Plaintiff argues that Rash Curtis may not rely on two screenshots excluded at summary judgment and trial. (5-SER-1091–92.) But this is a red herring and fails to refute Rash Curtis's argument. Rash Curtis's argument on appeal never mentioned, much less relied, on these screenshots. Rash Curtis had no need to do so because the other evidence in the record—developed *by Plaintiff*—demonstrated Plaintiff was not called at a skip-traced number. (AOB 39–40.)

Plaintiff conditioned class membership on the requirement that each class member was called at a skip-traced number. (1-ER-16–17.) Contrary to Plaintiff's assertions, these screenshots were not the "only evidence" Plaintiff's number was not skip traced. (AB 19.) Rather, *even absent* these screenshots, the unrebutted evidence showed Plaintiff's number was not skip traced. Early in the litigation, in April 2017, class counsel deposed former Rash Curtis employee Steven Kizer. (5-SER-1094.) In that deposition, Kizer reviewed the account notes for debtor Reynoso, noting an "ECA Advance" trace was run, showing Rash Curtis searched for Reynoso's information. (5-SER-1094.) Plaintiff's entire

10

theory that Plaintiff's number was skip traced comes from this notation. (AB 4–5.) But in the deposition, Plaintiff's counsel asked Kizer whether this notation meant there was "a skip trace for a phone number or can you tell?" (5-SER-1094.) Kizer, Plaintiff's only fact witness, testified it was impossible to determine based on the notation alone. (*Id.*) Thus, contrary to Plaintiff's suggestion (AB 4–5), an ECA Advance Trace notation *does not establish* that the number on the account was obtained by skip tracing (versus other information, such as an address). Rather, when Kizer reviewed the account history, he observed instead that the 5193 number had been removed from the "home field," which "stands for resident number." (5-SER-1094.) Thus, Plaintiff's number was not skip traced, but deleted from field 1. (AOB 39–40.)

Later that year, Rash Curtis produced two corroborative documents. The first was a screenshot of the ECA Advance Trace report returning skip-traced information for Reynoso, which *did not include* the 5193 number. (5-SER-1090.) This confirmed that although a trace was run on Reynoso, it was not the source of Plaintiff's number. The second document showed edits on the account notes, further confirming his number was deleted from field 1. (5-SER-1091.) The district court

excluded these documents because it believed Rash Curtis's production was belated and inconsistent with statements from counsel about available documents. (5-SER-1097.)

But the exclusion of these screenshots has no bearing on the appeal because, even without them, Kizer's testimony independently established Plaintiff's number was not skip traced. Significantly, Plaintiff concedes his number was not on his experts' list of skip-traced numbers. (AB 21.)[2] And the jury accepted the class list in full. The jury's verdict was that Rash Curtis made 534,698 calls to class members—the same number of calls on the experts' class list that *did not include Plaintiff*. (*See* 12-ER-3099–102; 11-ER-2625.) Since none of the calls were to Plaintiff, the verdict confirms he was not a member of the class. Other than the class list accepted by the jury, which *confirms* Plaintiff is not a class member, Plaintiff had no other evidence that his number was skip traced. And he cites no authority to suggest that a

---

[2]  Plaintiff's brief offers excuses for why Plaintiff's number wasn't on the class list, but the fact remains that, despite his experts' efforts to identify skip-traced numbers, they did not find Plaintiff's. That confirms Plaintiff's number was not skip traced and further demonstrates the methodology was unreliable. *See Sandoe v. Boston Sci. Corp.*, 333 F.R.D. 4, 8 (D. Mass. 2019) (excluding Verkhovskaya as unreliable because she failed to identify the named plaintiff).

district court has discretion to permit a class action to proceed where unrebutted evidence establishes the only named Plaintiff is not a class member, on the ground the court excluded *some* corroborating evidence.

If Plaintiff means to suggest the court maintained class certification as an implicit discovery sanction, notwithstanding his failure to show he was a class member, that would constitute a reversible abuse of discretion. Courts are not permitted to allow cases to proceed as class actions where the representative is not a class member. (AOB 32–37; *infra* Section II.B.)

> ### B. The district court had no discretion to certify the class where the sole representative never belonged to it.

Plaintiff does not dispute the fundamental requirement that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" under Federal Rule of Civil Procedure 23(a). *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982), quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Although the class action device is flexible, "actual, not presumed, conformance with Rule 23(a) remains nonetheless indispensable." *Id.* at 160; *see* AOB 32–34.

13

Plaintiff's attempt to distinguish binding Supreme Court authority misses the mark. (*See* AB 44–48.) Plaintiff emphasizes that *East Texas* and *General Telephone* involved employment discrimination claims with different procedural histories. But that is irrelevant to the bedrock principle that governs here: if the sole representative is not a class member, it is an abuse of discretion to maintain the class. Plaintiff cites nothing in those cases suggesting the procedural histories were determinative. Instead, the Supreme Court in *East Texas* specifically noted that the unusual procedural posture, in which the court of appeal certified the class, was not relevant. *East Texas*, 431 U.S. at 403 (declining to decide "whether a court of appeals should ever certify a class" because it was "inescapably clear" certification was erroneous "for the simple reason that . . . the named plaintiffs were not proper class representatives").

Unable to distinguish *General Telephone* and *East Texas*, Plaintiff's primary response is to cite to distinguishable cases that *predate* those holdings. Plaintiff cites *Sosna v. Iowa*, 419 U.S. 393 (1975), and two circuit court opinions issued in 1976 and 1975, for the proposition that the class is a "separate legal entity" and, by

implication, that Plaintiff does not need to be a class member. (AB 43–44.) Plaintiff misreads this earlier authority.

Plaintiff's cited cases at most hold that a representative who was originally a class member, but whose claim became moot, can sometimes continue as the representative. In *Sosna*, the named plaintiff challenged a statute prohibiting her from divorcing in Iowa before residing there for a year. *Sosna*, 419 U.S. at 397. At certification, she was a class member. *Id*. By the time her substantive case reached the Supreme Court, however, she had satisfied the residency requirement, and thus it "no longer stood as a barrier" to her divorce, raising the issue of whether she could represent the class with a now-mooted claim. *Id*. at 398.

The Court noted the "practical demands of time," because a "challenge to a short durational residency requirement" will rarely have a "spokesman who could retain a personal adversary position throughout the course of the litigation." *Id*. at 401 n.9. It reaffirmed that "[a] litigant *must* be a member of the class which he or she seeks to represent," but held as long as the plaintiff was a member "at the time

15

the class action is certified by the district court,"[3] she could continue to represent it after her claim became moot. *Id.* at 403. In so holding, it relied on Article III principles allowing for moot cases to continue where the injury is "capable of repetition, yet evading review." *Id.* at 400–01 (citing *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972)). But, "the same exigency that justifies this doctrine serves to identify its limits," and it does not apply where the plaintiff's "alleged harm would not dissipate during the normal time required for resolution of the controversy." *Id.* at 402.

Here, by contrast, Plaintiff *never was* a class member because his number was not skip traced. That was clear at certification, based on Kizer's testimony and the account notes. It was confirmed by Plaintiff's experts, who produced a class list that *does not include Plaintiff's number*. The *East Texas* Court explained this crucial distinction between a representative who was never a proper representative and one who *becomes* inadequate. The Court reasoned there would

---

[3] *General Telephone* later clarified that even after certification, a district court must continue to "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative" and must modify certification "in the light of subsequent developments in the litigation." 457 U.S. at 160.

"[o]bviously" be a different result if the plaintiff's claims had been "mooted or destroyed," "*provided the initial certification was proper*." *East Texas*, 431 U.S. at 406 n.12 (emphasis added). But in *East Texas*, like here, the named plaintiff was never a class member and thus certification was *not* proper. *See id.* at 403.

Even had Plaintiff once been a class member and his claim became moot, *Sosna* would still be inapposite. A TCPA action has no durational requirement, and therefore there are no exigencies at play, since a TCPA injury is not "capable of repetition, yet evading review." *Sosna*, 419 U.S. at 400–01 (citation omitted).

## C.    The district court compounded its abuse of discretion by refusing to decertify the class.

As explained above, Kizer's testimony established that Plaintiff's number was not skip traced, and thus he was not a class member, such that initial certification was an abuse of discretion. The district court repeated that abuse of discretion in refusing to consider Rash Curtis's decertification motion. (AOB 40.) Plaintiff's arguments on *decertification* are primarily procedural, and baseless.

*First*, Plaintiff argues that Rash Curtis "missed the deadline to file the motion by the motion filing deadline." (AB 20–21 (citing 5-SER-

1108–10).) But as Plaintiff conceded below, there was *no* "explicit deadline to file motions." (5-SER-1108.)

In any event, Plaintiff cites no authority for the remarkable proposition that a pre-trial deadline for general motion practice could bar decertification. This is unsurprising because the law is to the contrary. "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Therefore, "the certification of a class is always provisional in nature until the final resolution of the case," *Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016), and a motion to decertify is appropriate "at any time," *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009), with the district court bearing the obligation to revisit class certification if developments call on it to do so, *Stastny v. Southern Bell Telephone & Telegraph Co.*, 628 F.2d 267, 276 (4th Cir. 1980). (*See* AOB 43–44.) This is because "[u]nder Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, *and decertify as appropriate in response to the progression of the case from assertion to facts.*" *Richardson v. Byrd*, 709

F.2d 1016, 1019 (5th Cir. 1983) (emphasis added). Indeed, Plaintiff

admits a defendant may seek decertification "post-trial," (AB 42),

conceding Rule 23 would have permitted Rash Curtis to seek

decertification at any time.[4]

*Second*, Plaintiff complains the decertification motion did not

"bring to light any new facts that were not already raised and rejected."

(AB 21.) Plaintiff cites no authority for the proposition that new facts

are required before a defendant may seek to decertify an erroneously

certified class. But regardless, the decertification motion *did* present

new information demonstrating Plaintiff is not a class member:

Plaintiff's experts' reports, served after class certification. (AOB 40.)

### D. At minimum, if it was disputed whether Plaintiff's number was skip traced, the district court should have put it to the jury.

Plaintiff argues skip tracing is not an element of a TCPA claim.

(AB 31.) But as he concedes, it *is* "a pre-condition to class membership."

(*Id.*) Class counsel intentionally framed the case this way so it could

---

[4] Plaintiff faults Rash Curtis for not again seeking decertification after trial. (*Id.*) But Plaintiff cites no authority obligating Rash Curtis to do so. Nor could he, since the law permitted Rash Curtis to seek decertification *at any time* before judgment, including before trial.

19

proceed as a class action, because otherwise individual issues of consent would predominate. *See* 2-ER-296; *Sandoe*, 333 F.R.D. at 9 (denying TCPA class certification because of individual consent defenses). Class counsel cannot litigate its case for the class on one theory (skip tracing) and the class representative on another (wrong number from the creditor entered into field 1). *See General Telephone*, 457 U.S. at 159 (rejecting an "across-the-board" attack on all discrimination claims where named plaintiff did not belong to the class, defined more narrowly than cause of action). And, as discussed above, Plaintiff *must* be a class member for the class action to proceed with him as the sole representative.

Thus, the factual question of whether Plaintiff's number was skip traced is "essential to judgment." *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1991).[5] As explained above, the only evidence was that his number was not skip traced, and thus the court erred by maintaining

---

[5] Plaintiff focuses on the language in *Mateyko* that a trial court has "complete discretion" whether to use a general or special verdict. (AB 49 (emphasis omitted).) Rash Curtis is not challenging the use of a special verdict, but rather the verdict's failure, as *Mateyko* immediately explains is essential, "to obtain a jury determination of the factual issues essential to judgment." *Mateyko*, 924 F.2d at 827.

class certification. But if there was any dispute about this fact, it should have been resolved by the jury. (AB 44–45.) Although certification is a legal question for the court, if the resolution of that question depended on whether Plaintiff's number was skip traced, that factual question should have been put to the jury.

### E. Class counsel cannot "swap in" another representative after final judgment.

Plaintiff argues this Court should "give Class Counsel an opportunity to swap in another class representative," (AB 44), ignoring the contrary holding in *Lierboe v. State Farm Mutual Automobile Insurance Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). After finding Lierboe did not belong to the class, the Court addressed whether "the suit can proceed as a class action with another representative," and held it could not. *Id.* If the "sole named plaintiff . . . 'never was a member of the class she was named to represent,' the case *must* be remanded with instructions to dismiss." *Id.* (citation omitted).

This is because Lierboe, like Plaintiff, was never a class member. "If Lierboe initially had a viable stacking claim that later became moot," then "remand to the district court would be appropriate in order to determine whether a substitute representative would be available." *Id.*

21

at 1022–23 & n.6 (citation omitted). But, because "Lierboe has *and had no* stacking claim, the district court's certification of the class with Lierboe as its representative *must be vacated.*" *Id.* (emphasis added). As in *Lierboe*, Plaintiff cannot remedy this infirmity with a new representative at this stage.

The cases on which Plaintiff relies, (AB 44), are not to the contrary. In *National Federation of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007), when ruling on certification, the court expressed doubts about whether the plaintiff had a claim but granted "leave to substitute another class representative" *before* making its ruling. This is inapplicable here, as the district court certified the class, denied decertification, and entered judgment. In *Miller v. Mercedes-Benz USA LLC*, No. CV 06-05382, 2009 WL 1393488, at *2–3 (C.D. Cal. May 15, 2009), the court *denied* class certification because the representative was inadequate and *also denied* substitution, because it viewed substitution as a "bait-and-switch tactic" after "two years of litigation." *Id.* at *2 (holding where the original plaintiffs "*were never qualified to represent the class,*" substitution is "a back-door attempt to begin the action anew, and need not be granted" (emphasis added)

(quoting *Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973)). Finally, *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1339 (11th Cir. 2003), merely held that a district court should have let class counsel find a new representative before decertifying the class when the named plaintiff was at first adequate, but "had become inadequate" after bankruptcy. Again, Plaintiff here was never an adequate representative in the first place.

## III. If this Court does not reverse, it should reduce the judgment.

### A. The settlement agreement was complete and enforceable.

Plaintiff's brief makes no attempt to argue that any of the three terms that the district court found were missing from the settlement agreement were material. (*See* AB 50–51.) At most, Plaintiff suggests that a mutual release of claims might have been material because "Rash Curtis was attempting to collect medical debts." (AB 3–4.) This is baseless. Rash Curtis did not plead any counterclaims, and the time to do so had passed when the parties negotiated their settlement. (AOB 51 & n.5.) Further, nothing in the record suggests that any creditor-clients ever assigned rights to Rash Curtis for which it could have sued

Plaintiffs. Kizer testified that "Rash Curtis works off of a percentage of collected. They don't purchase paper. . . . 99.9 percent" of accounts are "for a fixed percentage." (5-SER-1057.) And Plaintiff ignores Rash Curtis's arguments explaining why the other terms identified by the district court are not material. (AOB 52–53.)

In any event, when the parties dispute whether a settlement agreement was complete but "material facts concerning the existence or terms of an agreement to settle are in dispute," the district court must hold an evidentiary hearing. (AOB 49 (emphasis omitted) (citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)).) Plaintiff argues "Rash Curtis cites no authority *requiring* an evidentiary hearing." (AB 50.) But Plaintiff ignores *Callie*, which was cited in the opening brief and requires such a hearing. (AOB 49 (citing *Callie*, 829 F.2d at 890).) Plaintiff claims neither party requested a hearing, (AB 50), but Rash Curtis did: it noticed the motion for hearing, (2-ER-201), and noted the court could hold an evidentiary hearing if facts were in dispute, (2-ER-208). The district court unilaterally vacated the requested hearing. (1-ER-11.)

Finally, Plaintiff claims Rash Curtis "admitted that Perez's offer was 'rejected' when Rash Curtis made a 'counteroffer.'" (AB 51 (citation omitted).) But the cited transcript is clear that this referred to the early negotiations. (1-SER-247 ("Mr. Perez states that on at least four occasions," the group of plaintiffs made offers and "they were rejected by Rash Curtis" by counteroffer).) Whether or not a counteroffer rejects the original offer is academic to the final deal to which both parties agreed, with no more counteroffers. (2-ER-235 ("Ok, we have a deal on the 60k with payments.").)

## B.    The damages are unconstitutionally excessive.

The damages as applied to *this* judgment are unconstitutionally excessive. (AOB 56–58.) Plaintiff merely recites the points made by the district court below, without addressing Rash Curtis's explanation for why that analysis failed to apply the constitutional standard under *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919) and the case law applying that standard to statutory damages schemes, including the TCPA.

Plaintiff argues the TCPA has a rational basis and is facially constitutional. (AB 53.) But this has no bearing on the standard set by

25

*St. Louis* and its progeny, which focuses on whether a statutory damages award is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable. (AOB 56–57.) Plaintiff cites no case to the contrary. *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012), merely held the TCPA statutory scheme in general is constitutional. But the standard for determining whether a particular judgment is excessive *as applied* governs even when the damages flow from facially rational statutory damages schemes. (AOB 61 (citing *Golan v. FreeEats.com, Inc.* (*Golan II*), 930 F.3d 950, 962–63 (8th Cir. 2019) (affirming reduction in TCPA statutory damages under *St. Louis* without holding the TCPA is facially unconstitutional)).)

Plaintiff's reliance on *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 710–11 (9th Cir. 2010), is likewise misplaced. That case did not apply the excessive damages standard to a ruinously high judgment; it merely held that the possibility a fact-finder might eventually award high statutory damages was not a basis for denying class certification, a separate legal question with a distinct analytical framework. *Compare id.*, *with St. Louis*, 251 U.S. at 66–67, *and Golan*

*II*, 930 F.3d 950 at 955. Indeed, *Bateman* never mentioned *St. Louis*, and acknowledged district courts have authority to reduce statutory damages for a class if excessive. *Bateman*, 623 F.3d at 723 ("An award that would be unconstitutionally excessive may be reduced," but "constitutional limits are best applied after a class has been certified" (citation omitted)).

Here, where a judgment was actually entered and challenged as excessive, the district court had an obligation to meaningfully apply the *St. Louis* standard. Plaintiff emphasizes that trial courts declined to reduce TCPA class judgments in *Krakauer*, 2017 WL 4417957, and *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857, 2020 WL 4728878 (D. Or. Aug. 14, 2020). (AB 51.) However, as Rash Curtis explained, (AOB 61), it is unremarkable that the specific facts of a particular case may not have warranted a reduction under the fact-specific standard, and such decisions shed no light on whether the award in *this* case under *these* facts is constitutional—a point Plaintiff ignores. Notably, *Krakauer* is far different from this case, where the defendant was "worth $28 billion" and made "$700 million to 1.5 billion annually for the past several years," demonstrating it could pay the judgment "and still

maintain operations." *Krakauer*, 2017 WL 4417957, at \*10. And *Wakefield* did no more than rely on the district court's decision in *this* case—demonstrating there is no binding precedent for the district court's ruling, just two district courts citing to each other. (AOB 62 n.7.)

Finally, Plaintiff repeats the district court's puzzling assertion that Rash Curtis did not provide evidence of "after-tax profits." (AB 54.) But Rash Curtis *did* provide evidence that the award is a shocking 9,500 times greater than its 2017 "net income" (denoting revenue after expenses). (13-ER-3261.) If there is any distinction between the two, Rash Curtis cannot be faulted for conservatively choosing net income rather than reducing that number further to account for taxes. Neither the district court nor Plaintiff cite to any authority for the proposition that evidence of "after-tax profits" is necessary to show a judgment is ruinous but "net income" is insufficient.

## C. Damages for calls depending on an unconstitutional version of the TCPA should be excised from the judgment, because federal courts lack jurisdiction to enter judgment on those calls.

As several district courts have correctly ruled, the Supreme Court's decision in *Barr v. American Ass'n of Political Consultants* (*AAPC*), 140 S. Ct. 2335, 2343–2344 (2020), holds the TCPA's autodialer

ban was unconstitutionally content-based from 2015 to 2020, and because federal courts lack jurisdiction to enforce violations of unconstitutional laws, they cannot enforce claims for violations that occurred during that period. *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117, at *1 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy, LLC*, No. 19-CV-2862, 2020 WL 6361915, at *3–7 (N.D. Ohio Oct. 29, 2020); *Hussain v. Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536, at *3 (M.D. Fla. Dec. 11, 2020) ("Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter over this action."). And of course, jurisdictional challenges can be made at any time and are not waivable. (AOB 65.)

Faced with the jurisdictional hurdle, Plaintiff, citing *Shen v. Tricolor California Auto Group, LLC*, No. CV 20-7419, 2020 WL 7705888, at *2 (C.D. Cal. Dec. 17, 2020), argues the entire judgment should be upheld because *some* of the calls in this case predated 2015, and the district court had jurisdiction over *those*. (AB 56.) But *Shen* merely ruled that a complaint need not be dismissed wholesale when some of the calls were made outside the period of unconstitutionality.

29

*Shen*, 2020 WL 7705888, at \*4. *Shen* never said a court has jurisdiction to *enter judgment* for calls during the period when the statute was unconstitutional and whether, if it does so in excess of its authority, those calls need be excised on appeal.[6]

Plaintiff is correct that a split of authority has developed between district courts on this issue.[7] But Plaintiff offers little explanation for why, on the merits, this Court should adopt the view of the district courts that have permitted the enforcement of TCPA violations that occurred during the period of unconstitutionality. Rather, on the merits, Plaintiff's *only* argument is that footnote twelve of *AAPC* resolves this issue. (AB 56–57.) But it does not. "Because this footnote was only joined by Chief Justice Roberts and Justice Alito, it is nonbinding

---

[6]  Regardless whether it goes to jurisdiction, this Court can and should reach the purely legal question presented here, especially given that the issue arises due to the Supreme Court's intervening decision in *AAPC*. (AOB 65–66 n.8.) Plaintiff argues the Court should decline to exercise its discretion, (AB 56), but he cannot show any prejudice given that the factual record for the issue is fully developed. (AOB 65 n.8.)

[7]  Plaintiff is incorrect that *Canady v. Bridgecrest Acceptance Corp.*, No. CVB-19-04378, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020) has decided this question in its favor, (AB 57); that case briefly mentioned *AAPC* and then ordered a stay pending the Supreme Court's forthcoming decision regarding the definition of an ATDS.

dicta." *Stoutt v. Travis Credit Union*, No. 2:20-cv-01280, 2021 WL 99636, at *3 (E.D. Cal. Jan. 12, 2021); *see Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-02072, 2020 WL 8184336, at *3 (C.D. Cal. Dec. 21, 2020) (noting "[t]he footnote presents a paradox" and "does not provide binding guidance on the issue"); *Shen*, 2020 WL 7705888, at *4 (same). The district courts that have ruled for plaintiffs have done so because they consider footnote twelve "persuasive," not because it decides the issue. *Stoutt*, 2021 WL 99636, at *3.[8] And for the reasons set forth in *Creasy*, *Lindenbaum*, and now *Hussain*, in the context of the First Amendment's prohibition on content discrimination, the autodialer ban was unconstitutional while it was paired with the government-debt exception, and courts have no authority to enforce violations during this time period.

---

[8]  Another district court in this circuit has recently issued a stay pending the Court's decision here, recognizing that this is a "thorny issue." *Camacho v. Hydroponics, Inc.*, No. 20-980, 2021 WL 940318, at *4 (C.D. Cal. Mar. 10, 2021).

**D.   If the Supreme Court's forthcoming opinion holds an ATDS must generate numbers, this Court must reduce the judgment.**

Plaintiff claims this panel "does not need to reach" the definition of an ATDS because it cannot overrule *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1052 (9th Cir. 2018). (AB 57.) If, however, the Supreme Court issues its opinion in *Facebook, Inc. v. Duguid*, No. 19-155 (petition for cert. granted July 9, 2020), before this appeal is resolved, and it holds the relevant 31,064 calls were not made with an ATDS, this Court should apply the new holding and reduce the judgment accordingly. *See Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 27 (1940) ("[I]f, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed . . . .").

**E.   This Court should reverse the percentage-based attorney fee because this is not a common fund case.**

Plaintiff claims the district court already ruled that remaining funds will *not* revert to Rash Curtis, "so there is no risk that Class Counsel's fees would come out of a portion of the judgment that would revert to Rash Curtis." (AB 58 (citing 1-ER-124).) Not so; what the district court declined to do was to amend the judgment to address the

32

issue. (1-ER-131.) The amended judgment reiterated the original judgment's percentage-based attorney fee, (14-ER-3681), but did not specify what will happen to unclaimed funds.

Plaintiff, citing *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997), argues it would have been an abuse of discretion to award a different attorney fee. (AB 58.) But *Williams* is inapposite. The defendants there were granted reversion of unclaimed funds, and the district court noted "the payment of fees from the money remaining in the fund thus would amount to prohibited fee shifting: assessing fees against the defendants, rather than against the absent class members," *Williams*, 129 F.3d at 1027, the same rationale expressed in *Holtzman v. Turza*, 828 F.3d 606, 608–09 (7th Cir. 2016). Although the Ninth Circuit reversed, it did not do so because the district court was wrong about fee shifting; it did so because "this case involves a settlement that was negotiated at arms length, not a judgment," and parties in a class action may "negotiate not only on the settlement of the action itself," but also attorneys' fees. *Williams*, 129 F.3d at 1027. Where defendants "knew, *because it was a settlement agreement*, that the class attorneys would seek to recover fees based on

33

the entire . . . fund," they had "to negotiate . . . for a smaller settlement

fund if they wished to limit fees." *Id.* (emphasis added). This case of

course was not settled, but ended in a judgment, and the common fund

risks impermissibly shifting fees to Rash Curtis.

Rash Curtis also showed a common fund is inappropriate here,

because TCPA claims stem from "discrete injuries suffered by each

recipient of the [calls]," rather than "aggregate and undifferentiated

injuries." (AOB 69 (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682,

688 (7th Cir. 2013)).) Plaintiff's only response is that *Holtzman* is out-

of-circuit, (AB 58), but that does not mean that the law is *different* here;

merely that this Court has yet to address the issue.

Plaintiff's brief asserts, with no citation, that *Holtzman* "goes

against binding authority in this Circuit and the Supreme Court's

decision in *Boeing* [*Co. v. Van Gemert*, 444 U.S. 472 (1980)]." (AB 59.)

But as noted by Judge Easterbrook, *Boeing* only applies to common-

fund cases, and TCPA cases are not common-fund cases. *Holtzman*, 828

F.3d at 608. Assuming "this Circuit" refers to *Six (6) Mexican Workers v.*

*Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), (*see* AB

58), that case involved aggregate and undifferentiated injuries, so under

*Holtzman*, was a proper common fund. (AOB 69–70.) Plaintiff cites no authority in this jurisdiction holding a common fund is appropriate in a TCPA action, where each class member seeks "recovery for discrete wrongs." *Holtzman*, 828 F.3d at 608.

## CONCLUSION

For the reasons above, and in the opening brief, this Court should reverse the judgment.

March 19, 2021

**HORVITZ & LEVY LLP**
  ROBERT H. WRIGHT
  FELIX SHAFIR
  REBECCA G. POWELL
**ELLIS LAW GROUP, LLP**
  MARK E. ELLIS
  ANTHONY J. VALENTI
  LAWRENCE K. IGLESIAS

By: _____ s/ Rebecca G. Powell _____

Attorneys for Defendant-Appellant
**RASH CURTIS & ASSOCIATES**

35

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-15946

I am the attorney or self-represented party.

**This brief contains** | 6,991 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(•) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Rebecca G. Powell     **Date** | Mar 19, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 08**      *Rev. 12/01/2018*